**In re Anonymous No. 65 D.B. 93**

Disciplinary Board Docket no. 65 D.B. 93.

To the Honorable Chief Justice and Justices of the Supreme Court of Pennsylvania:

MILLER, *Member,* December 20, 1994—Pursuant to Rule 208(d)(2)(iii) of the Pennsylvania Rules of Dis-

ciplinary Enforcement, the Disciplinary Board of the Supreme Court of Pennsylvania herewith submits its findings and recommendations to your honorable court with respect to the above-captioned petition for discipline.

## I. HISTORY OF PROCEEDINGS

On June 22, 1993, the Supreme Court of Pennsylvania issued a rule to show cause why the respondent should not be placed on temporary suspension, based on his conviction in the United States District Court for the [    ] District of Pennsylvania of one count of structuring deposits to evade reporting requirements in violation of 31 U.S.C. §§5322(a) and 5324(3).

On August 5, 1993, the Supreme Court ordered the respondent to be placed on temporary suspension pursuant to Rule 214(d)(1), Pa.R.D.E..

Respondent filed a petition for dissolution or amendment of the temporary suspension with the Supreme Court on August 24, 1993. The Office of Disciplinary Counsel filed an answer to respondent's petition for dissolution or amendment of temporary suspension on August 27, 1993.

On September 2, 1993, a hearing was held before designated Disciplinary Board Member James J. Powell, III, Esquire pursuant to Rule 214(d)(4), who subsequently recommended to the Supreme Court that respondent's petition be granted.

The Supreme Court denied the petition for amendment or dissolution by order dated October 14, 1993. The respondent requested an expedited hearing in this matter on November 24, 1993.

On December 7, 1993, the petition for discipline was filed.

The matter was referred for hearing to Hearing Committee [    ] consisting of [    ], Esquire, Chairperson, and members [    ], Esquire and [    ], Esquire on December 14, 1993, pursuant to the accelerated request. The answer to the petition for discipline was filed by the respondent on December 23, 1993. An accelerated disciplinary hearing was held January 24, 1994.

On July 8, 1994, the Hearing Committee filed its report recommending an eight month suspension retroactive to September 5, 1993.

On July 11, 1994, Office of Disciplinary Counsel advised that it would file no brief on exception to the report of the Hearing Committee. Respondent also informed the board that no briefs on exceptions will be filed to the Hearing Committee report on July 12, 1994.

The matter was adjudicated at the Disciplinary Board meeting of September 29, 1994.

## II. FINDINGS OF FACT

(1) Petitioner, whose principal office is now located at Suite 400, Union Trust Building, 501 Grant Street, Pittsburgh, Pennsylvania, is invested, pursuant to Rule 207 of the Pennsylvania Rules of Disciplinary Enforcement, with the power and the duty to investigate all matters involving alleged misconduct of an attorney admitted to practice law in the Commonwealth of Pennsylvania and to prosecute all disciplinary proceedings brought in accordance with the various provisions of the aforesaid rules.

(2) Respondent, [    ], was born in 1950 and was admitted to the practice of law in the Commonwealth of Pennsylvania on April 19, 1978. Prior to his temporary suspension by order of the Supreme Court dated August

5, 1993, he maintained an office for the practice of law at [    ].

(3) On October 19, 1992, the United States Attorney filed an information with the United States District Court for the [    ] District of Pennsylvania charging the respondent with one count of structuring deposits to evade reporting requirements in violation of 31 U.S.C. §§5324(3) and 5322(a). The information was captioned *United States of America v. [respondent]* and docketed at no. [    ].

(4) The respondent pleaded guilty to the information on November 16, 1992.

(5) Respondent was sentenced on March 12, 1993 to four months of incarceration, followed by two years of supervised release, the first four months of which respondent was restricted to electronically monitored home detention. Respondent was further ordered to pay a fine of $2,000 and a $50 special assessment.

(6) Respondent was released on his own recognizance pending an appeal of his sentence.

(7) Respondent filed a notice of appeal to the United States Court of Appeals for the Third Circuit on March 19, 1993. The Court of Appeals remanded his case to the District Court for possible re-sentencing under the amended sentencing guidelines on January 11, 1994. (Stip. exh. A.)

(8) By order dated January 13, 1994, Judge [A] directed the respondent, if he was of the view that the court should apply the amended guideline and reduce the sentence, to file a motion therefore with supporting brief within 20 days. The respondent filed such a motion but without a supporting brief, believing no brief was required since the government concurred in his request to be resentenced under the amended guideline.

(9) By order dated March 15, 1994, Judge [A] granted the respondent until March 23, 1994 to file a brief. He did so on that date. (Stip. exh. B.)

(10) On March 25, 1994, the United States Attorney filed its brief wherein it essentially agreed with the respondent's position that he, respondent, should be resentenced under the amended guideline. (Stip. exh. C.)

(11) By order dated April 15, 1994, Judge [A] concluded he should resentence the respondent under the amended guideline. Sentencing was scheduled for April 27, 1994. (Stip. exh. D.)

(12) On April 29, 1994, the respondent was resentenced to a lesser sentence of four months of monitored in-home detention. He was directed to pay a $50 special assessment, a fine of $2,000 within 60 days, and placed on probation for a period of one year, subject to various terms and conditions, including the following:

"The defendant shall remain during the first three months of probation at his residence with electronic monitoring, unless given permission in advance by the probation officer to be elsewhere. The defendant shall maintain a telephone with no special features at his place of residence for the above period. Special features shall include but not be limited to call forwarding devices and answering machines. Provisions shall be made by the probation officer for the defendant's absence from the residence for employment, medical services, religious services and necessary shopping. The defendant shall be entitled to be absent from his residence to engage in the coaching of a little league team at practices and at games." (Stip. exhs. D, E, F.)

(13) The District Court in its original opinion made the following findings of fact:

"(a) That on each of five successive working days, the defendant deposited $9,000 from the safe deposit box into the account at [B] Bank; ..." (Exh. PX-1, attachment C, p. 6.)

"(b) That by structuring the deposits in this matter, the defendant attempted to prevent the bank from filing currency transaction reports with the Internal Revenue Service." *Id.*

"(c) That the defendant was aware of the reporting requirements at the time he structured the funds." *Id.*

"(d) That the defendant structured the deposits in order to avoid questions by the Internal Revenue Service as to the source of the funds." *Id.*

"(e) That there was no victim to respondent's crime and specifically that no individual government agency or institution suffered any harm; ..." *Id.* at 7-8.

"(f) That respondent's actions did not result in the harm or harms that the statute contemplated; ..." *Id.* at 18.

"(g) That the money structured by the defendant was not the fruit of any illegal activity; ..."

"(h) That respondent cooperated fully with investigators and the United States Attorney throughout the process, ..." *Id.* at 7; and

"(i) That respondent fully accepted responsibility for his actions." *Id.* at 8.

(14) Respondent continued to evidence the acceptance of responsibility for his actions at the accelerated hearing. (N.T. p. 9.)

(15) The respondent testified that he was remorseful for his conduct. (N.T. p. 16.)

(16) The specific facts, as asserted by the respondent, would not currently be criminal under a decision by the United States Supreme Court, *Ratzlaf v. United States,* 1994 U.S. Lexis 936. (Exh. PX-2, pp. 1-2.)

## III. CONCLUSIONS OF LAW

Structuring deposits to evade reporting requirements, 31 U.S.C. §§5324(3) and 5322(a), is punishable by imprisonment for a maximum period of five years and is, therefore, a serious crime as defined by Rule 214(i), Pa.R.D.E. Respondent's conviction is conclusive evidence of professional misconduct and a per se ground for discipline under Rule 203(b)(1), Pa.R.D.E.

## IV. DISCUSSION

Respondent was convicted of a crime which meets the definition of a serious crime in Rule 214(i), Pa.R.D.E. His appeals are exhausted, and he does not contest the validity of his conviction. Therefore, the only issue before the board is the appropriate level of discipline to be imposed.

Respondent negotiated a $75,000 loan from a client he was representing in a tax matter. Respondent received this loan in the form of cash. To avoid triggering the cash deposit reporting requirements under federal law, the respondent placed the cash in a safety deposit box and deposited $9,000 per day into a new account he opened when he received the loan. By structuring his deposits in this fashion, the respondent attempted to prevent the bank from filing currency transaction reports with the Internal Revenue Service. The respondent was aware of the reporting requirements at the time he struc-

tured the funds. The bank reported respondent's activities to federal authorities who eventually interviewed the respondent who cooperated fully and completely with the investigation. Respondent subsequently pleaded guilty to one count of the offense.

Sentencing was delayed, and ultimately was the subject of an appeal. U.S. District Judge [A] noted his unhappiness with the result under the sentencing guidelines, stating in his opinion, "[w]e are of the view that [the minimum sentence possible under the guidelines] is far too harsh for this defendant." Opinion, March 2, 1993 at 17. The court went on to state that the result reached was mandated by the state of the law, and that if permitted by the Court of Appeals, he would exercise his discretion to depart downwards from the guidelines. *Id.*

The court's uneasiness at sentencing stems from the central difficulty in this case; the record is clear that the monies were legitimate and arguably no taxes were due and owing on the monies, therefore, respondent's conduct did not cause or threaten the harm or evil sought to be prevented by 31 U.S.C. §§5324(3) and 5322(a). (See exh. PX-1, attachment C, p. 17.) Further, difficulty stems from the fact that the court believed that it was unable under existing sentencing guidelines to impose a sentence more appropriate for the respondent's conduct.

The purpose of the disciplinary system is not primarily to punish the errant attorney. *Office of Disciplinary Counsel v. Lucarini,* 504 Pa. 271, 280, 472 A.2d 186, 190 (1983). The major purpose is to protect the public and the legal system from unfit attorneys. *Id.* Thus,

when the basis for the proceeding arises from a criminal conviction, the "inquiry must focus on whether the attorney's character, as shown by his conduct, makes him unfit to practice law from the standpoint of protecting the public and the courts." *Office of Disciplinary Counsel v. Casety,* 511 Pa. 177, 181, 512 A.2d 607, 609 (1986).

First, there is no doubt that the crime of which the respondent was convicted is classified as a "serious crime" within the meaning of Rule 214(i), Pa.R.D.E., because the maximum penalty for the offense is imprisonment for five years. However, the facts surrounding the conviction and Judge [A's] remarks, coupled with the fact that respondent received the lowest sentence possible under the federal sentencing guidelines, merits consideration. Furthermore, petitioner did not allege any violations of the Rules of Professional Conduct in this proceeding.

Other evidence in the case suggests that respondent's conduct was a momentary lapse and not a continuing course of culpable conduct. Respondent cooperated with federal investigators when he became aware that his conduct may have been illegal. (PX-1, attachment C, p. 7.) He continued his cooperation with the United States Attorney's Office. *(Id.)* Respondent pleaded guilty, and the sentencing opinion noted that respondent had done "everything which he could do to accept responsibility for his actions." *(Id.* at p. 8.) Another telling fact is the lack of any victim in this offense. The money was not proceeds from any crime; and "[n]o individual, institution, or governmental agency suffered financial or other harm by reason of this offense." *(Id.* at p. 8.)

Therefore, balancing the factors in this case, the board finds a period of suspension from the practice of law for a period of 12 months is appropriate.

## V. RECOMMENDATION

The Disciplinary Board of the Supreme Court of Pennsylvania respectfully recommends that respondent, [    ], be suspended for a period of 12 months retroactive to August 5, 1993, the date he was placed on temporary suspension.

It is further recommended that the court direct that respondent pay all of the necessary expenses incurred in the investigation and processing of this matter pursuant to Rule 208(g), Pa.R.D.E.

Messrs. Leonard and Witherel did not participate in the adjudication.

## ORDER

And now, January 13, 1995, upon consideration of the report and recommendations of the Disciplinary Board dated December 20, 1994, it is hereby ordered that [respondent], be and he is suspended from the bar of this Commonwealth for a period of 12 months, retroactive to August 5, 1993, and he shall comply with all the provisions of Rule 217, Pa.R.D.E.

It is further ordered that respondent shall pay costs to the Disciplinary Board pursuant to Rule 208(g), Pa.R.D.E.

Mr. Justice Montemuro is sitting by designation.